# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action 3:16-cr-00560-JMC-9 |
| | ) | |
| Allison Amanda Sauls, | ) | **ORDER AND OPINION** |
| | ) | |
| Defendant. | ) | |

On July 19, 2016, Defendant was indicted on nine (9) counts of wire fraud. (ECF No. 2 at 26-28.) On March 22, 2017, a Superseding Indictment was filed. (ECF No. 204.) On November 2, 2017, Defendant pleaded guilty to wire fraud, Count Fourteen (14) of the Superseding Indictment (ECF No. 204). (ECF No. 331.)

On March 8, 2018, Defendant's Counsel James M. Griffin ("Griffin") moved to withdraw as Defendant's counsel. (ECF No. 401.) The court set a hearing for March 29, 2018 on Griffin's Motion to Withdraw (ECF No. 401). (ECF No. 407.) On March 28, 2018, Defendant's other Counsel Karen C. Simmons ("Simmons") moved to withdraw. (ECF No. 412.) On March 29, 2018, the court granted both of Defendant's counsel's Motions to Withdraw. (ECF Nos. 401, 412.) At the conclusion of the hearing, the court ordered that the case be referred to a Magistrate Judge for appointment of counsel. (ECF No. 417.) On the same day, Magistrate Judge Paige J. Gossett appointed a Federal Public Defender for Defendant. (ECF No. 422.) On April 13, 2018, Defendant filed a Motion to Withdraw Guilty Plea (ECF No. 441), and on April 20, 2018, the Government responded (ECF No. 442).

Before the court is Defendant's Motion to Withdraw Guilty Plea (ECF No. 441). For the reasons stated below, the court **DENIES** Defendant's Motion.

# I. LEGAL STANDARD

Pursuant to Fed. R. Crim. P. 11(d)(2)(B), "a defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." "Courts typically consider a variety of factors in determining whether a defendant has met his burden under Rule 32(d) [in establishing that a fair and just reason supports his request to withdraw].[1] The factors include (1) whether the defendant has offered credible evidence that his plea was not knowing or not voluntary, (2) whether the defendant has credibly asserted his legal innocence, (3) whether there has been a delay between the entering of the plea and the filing of the motion, (4) whether defendant has had close assistance of competent counsel, (5) whether withdrawal will cause prejudice to the government, and (6) whether it will inconvenience the court and waste judicial resources." *United States v. Moore*, 931 F.2d 245, 248 (4th Cir. 1991). Defendant has the burden of demonstrating that she should be permitted to withdraw her guilty plea. *United States v. Sparks*, 67 F.3d 1145, 1154 (4th Cir. 1995).

The six factors enumerated in *Moore* were not meant to be applied mechanistically and each of the factors does not have to be given equal weight. *See Sparks*, 67 F.3d at 1154 ("The factors that speak most straightforwardly to the question whether the movant has a fair and just reason to upset settled systemic expectations by withdrawing her plea are the first, second, and fourth. In contrast, the third, fifth, and sixth factors are better understood as countervailing considerations that establish how heavily the presumption should weigh in any given case.").

---

[1] Fed. R. Crim. P. 32(d) was transferred to Fed. R. Crim P. 32(e), and then to Fed. R. Crim. P. 11(e) and then subsequently to Fed. R. Crim. P. 11(d). *See* Fed. R. Crim. P. 32(e) advisory committee's notes to 1994 amendment; Fed. R. Crim. P. 32(e) advisory committee's note to 2002 amendment; Fed. R. Crim. P. 11(e) advisory committee's notes to 2002 amendment.

## II. ANALYSIS

Defendant moves to withdraw her November 2, 2017 guilty plea (ECF No. 331) to Count Fourteen (14) of the Superseding Indictment (ECF No. 204). (ECF No. 441.) Defendant moves to withdraw her guilty plea on the basis that she has presented credible evidence that her plea was not "knowingly made" and that she has asserted legal innocence. (*Id.* at 4 ¶ 24.)

   a. *Knowing and Voluntary Guilty Plea*

Defendant acknowledged that there was a joint venture between Boykin Contracting, Inc. ("BCI") and Action Contracting ("Action"), and that she changed the names on certain bonds from Boykin Contracting Group ("BCG") to BCI which was necessary in order to receive funding from Star Funding ("Star"). (ECF No. 442-2 at 18:4-13, 25:4-11.) Star is a secondary financing company which offered "factoring agreements"[2]. (ECF No. 442-1 at 4.) According to the proffer Defendant signed, Defendant set up Action for the purpose of completing a factoring agreement with Star. (*Id.* at 5.)

Defendant asserts that her plea was not made knowingly because she did not acknowledge a fraudulent intent in changing the names on the bonds. (ECF No. 441 at 4 ¶ 25.) However, during the plea colloquy, the court took care to ensure that Defendant understood the crime to which she was pleading guilty and that Defendant understood the factual basis underpinning her guilty plea. (ECF No. 442-2 at 22:5-32:5.) Defendant agreed to the fact that she "accepte[d] payments on loans on accounts receivable that [were not] hers[, and that the accounts receivable] belonged to [BCI] not Action [which Defendant owns]." (ECF 442-2 at 26:8-12.) Defendant also agreed that

---

[2] "A factoring agreement is a method of financing a business. Under a factoring agreement, the factoring company will temporarily "purchase" certain business assets and provide the business owner some money that they can use to fund and finance the business in the short term." FACTORING AGREEMENT DEBT, http://www.adllawaz.com/business-debt/what-is-a-factoring-agreement/ (last visited May 23, 2018).

she knew it was illegal to take the money given by Star and to wire it into a business account, and then to use it for personal items. (*Id.* at 27:2-10, 28:12-24.) Further, Defendant agreed to the fact that "the overall scheme [was] that [Action was] benefitting from monies that [Defendant] legally did not have a contract for." (*Id.* at 29:7-10.)

Given all of the court's questions and Defendant's knowledge of the facts and evidence against her, she still chose to plead guilty. (*Id.* at 30:25-31:4.) Additionally, Defendant was represented by counsel whom she agreed was competent, which further establishes that she made her plea knowingly and voluntarily.[3] (*Id.* at 4:25-5:2, 8:6-22.) Defendant has not provided other evidence to contradict her statements acknowledging her wrongdoing during the plea colloquy, from which the court accepted Defendant's guilty plea. Ultimately, Defendant has failed to present evidence which establishes that her guilty plea was not made knowingly or voluntarily. Therefore, the court finds that this factor weighs against Defendant being allowed to withdraw her guilty plea.

    b. <u>Legal Innocence</u>

Defendant asserts that ". . . throughout the plea [she] denied that she knew she was doing anything wrong much less with any intent to defraud when she followed Thomas Brock's instructions to change the names of the company on the bond." (ECF No. 441 at 4 ¶ 25.)

Defendant pled guilty to one count of wire fraud in violation of 18 U.S.C. § 1343. (ECF No. 331.) The elements of wire fraud are (1) that the defendant devised or intended to devise a scheme to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises, and (2) that for the purpose of executing the scheme, the defendant

---

[3] *See United States v. Lough*, 203 F. Supp. 3d 747, 751 (N.D. W. Va. 2016) ("A defendant's guilty plea cannot be knowing and voluntary if he was denied effective assistance of competent counsel in accord with the standards in *Strickland v. Washington*, 466 U.S. 668 (1984)") (citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)).

transmitted or caused to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds. *See* 18 U.S.C. § 1343. A scheme to defraud ". . . requires that the defendant act with the 'specific intent to deceive or cheat, . . . for the purpose of getting financial gain for one's self or causing financial loss to another.'" *United States v. Brandon*, 298 F.3d 307, 311 (4th Cir. 2002) (quoting *United States v. Moede*, 48 F.3d 238, 241 (7th Cir. 1995)); *see also United States v. Wynn,* 684 F.3d 473, 478 (4th Cir. 2012) ("[T]he mail fraud and wire fraud statutes have as an element the specific intent to deprive one of something of value through a misrepresentation or other similar dishonest method, which indeed would cause him harm.") "[C]ommon-law fraud includes acts taken to conceal, create a false impression, mislead, or otherwise deceive in order to 'prevent[ ] the other [party] from acquiring material information.'" *United States v. Colton*, 231 F.3d 890, 898 (4th Cir. 2000) (quoting Restatement (Second) of Torts § 550 (1977)).

As stated above, Defendant agreed that she accepted payments on loans for accounts receivables that did not belong to her (ECF No. 442-2 at 26:8-12), she admitted that she changed the names on the bonds from BCG to BCI (*id.* at 18:22-19:9, 25:4-10; *see also* ECF No. 442-1 at 5), and she admitted that she knew it was illegal to take the money given by Star to the joint venture between Action and BCI and use it for personal items (*id.* at 28:12-24). Additionally, Defendant admitted that ". . . the overall scheme is that [her] company [benefitted] from monies that [she] legally did not have a contract for." (*Id.* at 29:7-10.)

Defendant asserts that she "never acknowledged that she knew it was illegal [to alter the names on the bonds] or that she had committed fraud by changing the names on the bonds." (ECF No. 441 at 4 ¶ 23.) Defendant also stated during the plea colloquy that she did not know changing

5

the names on the bonds was illegal.[4] (ECF No. 442-2 at 25:4-20.) However, she agreed to the fact that she was receiving payments on loans for accounts receivables that were not hers and did not belong to Action. (*Id.* at 26:8-12, 20-21.) Additionally, in the proffer that Defendant signed she acknowledged that in order to receive funding from Star she had to change the names of the bonds which she admits to doing. (ECF No. 442-1 at 5.) Defendant changing the names on the bond forms misrepresented important information to Star, and satisfies the first element of wire fraud.

As to the second element of wire fraud, because Plaintiff admits to participating and benefitting from the scheme to defraud Star, this element is satisfied as well. (ECF No. 442-2 at 28:12-24, 29:7-10.) Therefore, this factor weighs against her being allowed to withdraw her guilty plea.

   c. *Delay in Pleading*

Defendant pleaded guilty on November 2, 2017 (ECF No. 331), and did not move to withdraw her guilty plea (ECF No. 441) until April 13, 2018. In *United States v. Moore*, the United States Court of Appeals for the Fourth Circuit found that a six-week period between the time of the plea and the motion to withdraw the plea was a long delay. 931 F.2d 245, 248 (4th Cir. 1991); *see also United States v. Nicholson*, 676 F.3d 376, 384 (4th Cir. 2012) (the Fourth Circuit found that it was a long delay when Defendant pleaded guilty in December 2010 but did not move to withdraw his plea until February 2011) (*citing Moore*, 931 F.2d at 248).

---

[4] Defendant stated that she did not know that it was illegal to change the names on the bonds, and that Tom Brock told her to do it; however, she admitted to receiving money for accounts that did not belong to her company, Action. (*See* ECF No. 442-2 at 26:8-12.)

Defendant waited over five (5) months to move the court to withdraw here guilty plea, which exceeds the six (6) weeks that the Fourth Circuit found was too long. Therefore, this element weighs against Defendant being able to withdraw her guilty plea.

    *d.* *Assistance of Counsel*

Defendant asserts that "she has never had effective assistance of counsel either at the time of the plea agreement or the [time of the guilty plea] and has, thus, been subjected to a violation of [her rights under the Sixth Amendment to the United States Constitution]." (*Id.* at 2 ¶ 11.) Defendant posits that her original counsel "was not sufficiently familiar with federal criminal law and never familiarized himself with the great amount of discovery in this case nor did he make a proper investigation to be able to advise her of the issues as to a guilty plea or sentencing." (*Id.* at ¶ 12.) Further, Defendant also posits that her counsel who represented her at the change of plea hearing was unfamiliar with the case and did not have sufficient experience to effectively advise Defendant.[5] (*Id.*)

In order to establish that counsel's assistance was not effective, Defendant must provide evidence that her counsel's efforts fell below "an objective standard of reasonableness." *United States v. Lambey*, 974 F.2d 1389, 1394 (4th Cir. 1992). In Defendant's plea colloquy, Defendant acknowledged that she was satisfied with her counsel's representation during the time at which she signed the plea agreement and at the hearing where she pleaded guilty. (ECF No. 442-2 at 4:13-5:2, 8:6-18.) Defendant also acknowledged in her plea agreement that she had met with her counsel on a sufficient number of occasions to discuss Defendant's case, defenses, Defendant's rights at trial, and the benefits of a trial versus pleading guilty. (ECF No. 201 at 6-7 ¶ 6.)

---

[5] Defendant's counsel who represented her at the time Defendant signed the plea agreement died, therefore, Defendant's counsel's wife stepped in to represent Defendant and was the counsel of record at the change of plea hearing. (ECF No. 442-2 at 7:19-8:5.)

Defendant only makes conclusory statements regarding the competency or effectiveness of her counsel at different stages of the case and has not provided any evidence that her counsel throughout the case was in fact incompetent or that his or her efforts fell below an objective standard of reasonableness. Therefore, Defendant has not satisfied her burden under *Lambey*, thus, this factor weighs against Defendant being able to withdraw her guilty plea.

  *e.*  *Remaining Factors (Government Prejudice and Inconvenience to the Court)*

The Government asserts that allowing Defendant to withdraw her guilty plea would prejudice the Government because once Defendant agreed to plead guilty, the Government "did not continue rigorous additional investigation of [Defendant]" and did not entertain additional charges in a superseding indictment filed after Defendant pleaded guilty. (ECF No. 442 at 9.) Additionally, the Government asserts that because Defendant's codefendants have already pled guilty and have cooperation clauses as a part of their agreements, the Government would likely have to make additional motions under Fed. R. Crim. P. 35(b) for the codefendant's substantial assistance. (*Id.*) Moreover, the Government asserts that the court would have to address multiple motions from Defendant and her codefendants which would inconvenience and burden the court. (*Id.*)

Whether allowing Defendant to withdraw her guilty plea would be prejudicial to the Government or would be a waste of judicial resources and an overall inconvenience to the court are not dispositive of the case, as they are only balancing considerations for the court. *See Moore*, 931 F.2d at 248. Therefore, the court does not make a finding as to the extent the Government would be prejudiced or the extent in which the court would be inconvenienced by allowing Defendant to withdraw her guilty plea. *See Sparks*, 67 F.3d at 1154 ("Where [ ] a district court adjudicating a Rule [11] motion to withdraw a guilty plea determines that the first four factors

identified in *Moore* militate against granting the defendant's motion, it can reasonably refrain from trying to ascertain just how much withdrawal of the plea would prejudice the government and inconvenience the court.").

The court finds that because the first four factors enumerated in *Moore* weigh against Defendant being able to withdraw her guilty plea, Defendant has not presented a fair and just reason for requesting to withdraw her guilty plea. *See* Fed. R. Crim. P. 11(d)(2)(B); *Sparks*, 67 F.3d at 1154.

### III. CONCLUSION

For the reasons stated above, the court **DENIES** Defendant's Motion to Withdraw Guilty Plea (ECF No. 441.)

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

May 24, 2018
Columbia, South Carolina